## 23-13966-D

# United States Court of Appeals
### *for the*
# Eleventh Circuit

---

MANAGED CARE ADVISORY GROUP, LLC,

*Plaintiff/Appellant,*

— v. —

CIGNA HEALTHCARE, INC.,

*Defendant/Appellee.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 1:00-md-0134-FAM
(Hon. Federico A. Moreno)

# REPLY BRIEF OF APPELLANT

JEFFREY GUTCHESS
*Counsel of Record*
JOSHUA A. SHORE
AXS Law Group, PLLC
121 NW 2nd Ave., Suite 201
Miami, FL 33127
(305) 297-1878

ANDREW H. SELESNICK
VANESSA LEFORT
Buchalter
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017
(213) 891-0700
*Counsel for Plaintiff/Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (JOB 810706)

Managed Care Advisory Group, L v. CIGNA Healthcare, Inc., 23-13966-D

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Appellant certifies that the following persons and entities may have an interest

in this case:

1. AXS Law Group, PLLC

2. Beaulieu, Andrew

3. Brenner, Justin

4. Buchalter

5. Burke, Maura L.

6. Cartsensen, Elizabeth

7. Cigna Corporation [Ticker: CI]

8. Cigna Healthcare, Inc.

9. Cigna Healthcare Holdings, Inc.

10. Cigna Holdings, Inc.

11. Carolan, Jacqueline M.

12. Coffey Burlington

13. Connecticut General Corporation

14. Cunningham, Tim

15. Davis Wright Tremaine LLP

16. DeMaria, Joseph A.

17. Document Technologies, LLC, dba DTI

Managed Care Advisory Group, L v. CIGNA Healthcare, Inc., 23-13966-D

18. Epiq Class Action & Claims Solutions, Inc.

19. Epiq Systems, Inc.

20. Falbo, Mary

21. Fox Rothschild LLP

22. Funes, Freddy

23. Garcia, David

24. Gelber, Dan S.

25. Gelber Schachter & Greenberg, P.A.

26. Goodman, Jonathan (Magistrate Judge)

27. Greenberg, Gerald E.

28. Gunster Yoakley & Stewart, PA

29. Gutchess, Jeffrey W.

30. Hanzman, Michael A.

31. Hogan Lovells US LLP

32. Hooks, Geoffrey

33. IMEDECS

34. Kapila, Soneet (Special Master)

35. Kono, Kevin H.

36. Kozyak Tropin & Throckmorton LLP

37. Managed Care Advisory Group, LLC

Managed Care Advisory Group, L v. CIGNA Healthcare, Inc., 23-13966-D

38. Manning, Neil

39. Matthews, Joseph (Special Master)

40. McEnvoy, Todd

41. McQuilkin, Gail A.

42. Medina, Damaris L.

43. Millennium Healthcare Consulting, Inc.

44. Moreno, Federico A. (Judge)

45. Newell, Robert D.

46. O'Sullivan, John (Magistrate Judge)

47. Pennie, Alejandra Hernandez

48. Perry, Douglas

49. Podhurst, Aaron S.

50. Podhurst Orseck, P.A.

51. Reiling, Jarred L.

52. Schmidt, Timothy

53. Schultz, Thomas G. (Arbitrator)

54. Schwiep, Paul J.

55. Selesnick, Andrew H.

56. Shore, Joshua

57. Steinberg, Martin

Managed Care Advisory Group, L v. CIGNA Healthcare, Inc., 23-13966-D

58. Tropin, Harley S.

59. Walker, Kenneth

60. Weiss Serota Helfman Cole & Bierman, PL

61. Yenni and Company, Inc.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

REPLY ..............................................................................................1

A.    The Arbitrator Properly Exercised His Authority Under the FAA ................4

    1.    The District Court Was Required to Afford Maximum
        Deference to the Arbitrator's Final Award ...........................................5

    2.    The Arbitrator's Final Award Interpreted—and at the Very
        Least "Drew Its Essence" from—the Settlement Agreement ..............8

B.    The Arbitration *About* the Settlement Agreement Did Not Violate
      the Release Provisions *In* the Settlement Agreement...................................16

    1.    CIGNA Does Not Directly Address MCAG's Arguments on
        Appeal...................................................................................................17

    2.    CIGNA Raises Arguments of a Different Nature on a
        Different Plane .....................................................................................21

C.    Any Purported Error Did Not Warrant Vacatur of the Final Award............26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Bayside Constr. LLC v. Smith*,
  2022 WL 2593303 (CA3 July 8, 2022) ...................................................8

*Booth v. Hume Pub., Inc.*,
  902 F.2d 932 (CA11 1990) ....................................................................3

*Broadnax v. Sand Lake Cancer Center, P.A.*,
  819 F. App'x 799 (CA11 2020) ...............................................................2

*Cat Charter, LLC v. Schurtenberger*,
  646 F.3d 836 (CA11 2011) ...................................................................28

*Coinbase, Inc. v. Suski*,
  144 S.Ct. 1186 (2024)...........................................................................5

*Comcast of N.J., LLC v. IBEW Local Union No. 827*,
  2022 WL 169895502 (D.N.J. Oct. 31, 2022) ..........................................8

*DIRECTV, LLC v. Arndt*,
  546 F. App'x 836 (CA11 2013) ...............................................................4

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
  156 F.3d 310 (CA2 1998)............................................................... 15, 21

*Fitigues, Inc. v. Varat*,
  2 F.3d 1153 (CA7 1993) .......................................................................25

*Fortune, Alsweet and Eldridge, Inc. v. Daniel*,
  724 F.2d 1355 (CA9 1983) ...................................................................23

*Frontera E. Georgia, Ltd. v. Arar, Inc.*,
  483 F. App'x 896 (CA5 2012)...............................................................25

*Green v. Ameritech Corp.*,
  200 F.3d 967 (CA6 2000)......................................................................27

*Gherardi v. Citigroup Global Markets, Inc.*,
  975 F.3d 1232 (CA11 2020) ...................................................................6

*Grigsby & Assocs., Inc. v. M Secs. Inv.*,
  635 F. App'x 728 (CA11 2015) .............................................................20

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008) ..........................................................................3

*IMC-Agrico Co. v. Int'l Chem. Workers Council of United Food & Com.*
   *Workers Union, AFL-CIO*,
   171 F.3d 1322 (CA11 1999) .......................................................... 2-3

*Indep. Lab'y Employees' Union, Inc. v. ExxonMobil Rsch. & Eng'g Co.*,
   11 F.4th 210 (CA3 2021) ..................................................................8

*Jersey Shore Univ. Med. Ctr. v. Health Pros. & Allied Emps. ad Loc., 5058*,
   2022 WL 20668011 (D.N.J. Oct. 26, 2022) .........................................7

*Jones Dairy Farm v. Loc. No. P-1236, United Food & Com. Workers Int'l*
   *Union, AFL-CIO*,
   760 F.2d 173 (CA7 1985) ................................................................23

*Major League Baseball Players Ass'n v. Garvey*,
   532 U.S. 504 (2001) ............................................... 3, 6, 14, 27

*Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*,
   939 F.3d 1145 (CA11 2019) ................................... 1, 2, 4, 8, 9, 17, 18, 22, 23, 26

*Monongahela Valley Hospital Inc. v. United Steel Paper & Forestry*,
   946 F.3d 195 (CA3 2019) .................................................................7

*N.E. Univ. v. Serv. Employees Int'l Union, Local 509*,
   2021 WL 2813828 (D.Mass. May 24, 2021)........................................7

*Oxford Health Plans LLC v. Sutter*,
   569 U.S. 564 (2013) .....................................................................4, 6

*Paperworkers v. Misco, Inc.*,
   484 U.S. 29 (1987) ................................................... 6, 14, 27

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators'*
   *Warehouse Indep. Truck Drivers Union, Loc. No. 1*,
   611 F.2d 580 (CA5 1980) ........................................... 21, 26

*Poly Chain Capital LP v. Pantera Venture Fund II LP*,
   2022 WL 2467778 (Del.Ch. July 6, 2022) ..........................................7

*Prostyakov v. Masco Corp.*,
   513 F.3d 716 (CA7 2008)................................................................25

*Ruckh v. Salus Rehab., LLC*,
   963 F.3d 1089 (CA11 2020) ...........................................................15

*United Paperworkers Int'l Union, AFL-CIO, CLC & It's Local No. 369 v. Ga. Pac. Corp.*,
 841 F.2d 243 (CA8 1988) .......................................................................25

*United Steelworkers of Am. v. Am. Mfg. Co.*,
 363 U.S. 564 (1960) ....................................................................... 3, 27

## REPLY

After CIGNA settled a class-action lawsuit alleging that it illegally deprived healthcare providers of payments under their insurance contracts, it then deprived them of the payments they were owed under the resulting class-action Settlement Agreement. When one of the thousands of class members that MCAG represents filed a motion to enforce the Settlement Agreement, CIGNA proposed submitting the matter to binding arbitration instead.

As a result of "significant negotiations," that motion was withdrawn in favor of a series of overlapping written agreements appointing an arbitrator with sweeping authority to consider "any issues that … could have been raised before" the district court, and to render the "final resolution of all issues relating to" the class members' claims for compensation under the Settlement Agreement. 11th.Cir.Dkt.44-8: 12-13, 17-19; *accord Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1151 (CA11 2019) ("MCAG and CIGNA agreed to binding arbitration of the matter" raised "in the motion for enforcement of the settlement [requesting] that the district court direct CIGNA to pay" for "improperly process[ed] claims").

The parties directed the arbitrator to "conduct a de novo review" and "make all decisions with regard to the compensability" of the class members' claims under the Settlement Agreement, and to "issue a reasoned opinion," consisting of a $7.5 million payment at the inception of the arbitration and an additional award in

"an amount [up to] $67 million." 11th.Cir.Dkt.44-8: 12-13, 17-19. In exchange, MCAG and the class members agreed to "be bound by the decision of the Arbitrator and shall not be permitted to seek compensation … through any other means" or "in any forum other than the Arbitration." 11th.Cir.Dkt.44-6: 44; 11th.Cir.Dkt.44-8: 12-13, 17-19.

At the culmination of an arbitration proceeding that lasted 16 years, the arbitrator held a three-week final evidentiary hearing and issued a final award that offered mixed results for each party but ultimately found that the class members were owed an additional $16 million under the terms of the Settlement Agreement. The district court's order vacating the arbitrator's final award is remarkable in all the wrong ways.

Because "settlements are highly favored" as a critical tool of efficient judicial administration, they should "be enforced whenever possible." *Broadnax v. Sand Lake Cancer Center, P.A.*, 819 F. App'x 799, 801 (CA11 2020). And, as this Court underscored in this case, "the district court has a duty to class members to see that any settlement it approves is completed, and not merely to approve" an empty promise to pay the class members. *Managed Care*, 939 F.3d at 1162.

The "parties in this case bargained for an arbitrator, and not a federal court, to interpret the provisions of" the Settlement Agreement. *IMC-Agrico Co. v. Int'l Chem. Workers Council of United Food & Com. Workers Union, AFL-CIO*, 171 F.3d

1322, 1328-29 (CA11 1999). And, because the parties agreed "to submit all questions of interpretation to the arbitrator," the "function of the [district] court [was] very limited." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960).

The Federal Arbitration Act "substantiat[es] a national policy favoring arbitration with just … limited review" that does not "open[ ] the door to the full-bore legal and evidentiary appeals that can 'render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (brackets omitted). Anything less would frustrate the "purpose of the Federal Arbitration Act," which is designed "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that [is] speedier and less costly than litigation." *Booth v. Hume Pub., Inc.*, 902 F.2d 932-33 (CA11 1990).

The district court does not appear to have taken any of these bedrock legal principles to heart; and, if it did, "its application of them is nothing short of baffling." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 510 (2001). Under the district court's order, the procedure for processing and paying class members' claims that three arbitrators have held to be incomplete and erroneous will never be fully completed or adjudicated. There is no merit to CIGNA's arguments that the district court was entitled to vacate the arbitrator's final award for any reason,

particularly under the Federal Arbitration Act's exceedingly deferential standard of review.

### A.    The Arbitrator Properly Exercised His Authority Under the FAA

CIGNA acknowledges that, in referring this matter to an arbitrator, the parties and the district court agreed that the exclusive "grounds for appeal[ing]" the arbitrator's final award were "the same as … those set forth in the FAA"—and, as relevant here, only where the arbitrator "'exceed[ed] his power or authority.'" 11th.Cir.Dkt.49: 31 (quoting 11th.Cir.Dkt.44-6: 44, ¶6(d)).

The arbitrator properly exercised the expansive authority delegated to him by the parties (in their written arbitral agreements) and by the district court (in its stipulated order) by determining whether the class members' "claims for Category Two Compensation … are payable pursuant to" the Settlement Agreement. *Managed Care*, 939 F.3d at 1163 n.7.

Because the arbitrator's final award at least "arguably interpreted" the Settlement Agreement, "the district court should have ended its inquiry and denied [CIGNA's] petition for vacatur." *DIRECTV, LLC v. Arndt*, 546 F. App'x 836, 840 (CA11 2013). CIGNA does not squarely address the points and authorities raised in MCAG's principal brief, but rather obscures "the sole question on judicial review," which "is whether the arbitrator (even arguably) interpreted" the Settlement Agreement. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

1.    *The District Court Was Required to Afford Maximum Deference to the Arbitrator's Final Award*

"Basic legal principles establish the answer" to the central question raised this appeal. *Coinbase, Inc. v. Suski*, 144 S.Ct. 1186, 1191 (2024). As the Supreme Court has "stress[ed], … well-established principles" recognize that arbitration "is a matter of contract," and "parties can agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id*.: 1195 (Gorsuch, J., concurring) (cleaned up).

And here, the parties' arbitration agreements and the district court's stipulated order conferred sweeping authority on the arbitrator to resolve the parties' disputes over the interpretation of a class-action settlement agreement based on "any issues that … could have been raised before" the district court, while precluding MCAG and the class members from "seeking compensation … in any [other] forum" or "through any other means." 11th.Cir.Dkt.44-8: 12-13.

- First, the arbitrator was delegated authority to "make all decisions with regard to the compensability" of the claims submitted by class members under the Settlement Agreement. 11th.Cir.Dkt.44-6: 43.

- Second, the arbitrator was delegated authority "to conduct a de novo review of the compensability" of the claims submitted by class members under the Settlement Agreement. 11th.Cir.Dkt.44-8: 18.

- Third, the arbitrator was delegated authority to "issue a reasoned opinion" representing the "final resolution of all issues relating to whether the claims" submitted by the class members "are payable pursuant to" the Settlement Agreement. *Id.*: 12.

- Fourth, the arbitrator was delegated authority to "award[ ] MCAG an amount [up to] $67 million," based on the total value of the unpaid claims submitted by class members under the Settlement Agreement. *Id.*: 17.

Thus, under the settled precedents of this Court and the Supreme Court, the district court's review of the final award should have been confined to a mere "quasi-jurisdictional … check," which is "among the narrowest known to the law." *Gherardi v. Citigroup Global Markets, Inc.*, 975 F.3d 1232, 1236-37 (CA11 2020), and only to confirm that the arbitrator's final award—no matter how "implausible" its outcome seemed to be, *id.*— at least "dr[ew] its essence" from the Settlement Agreement. *Oxford*, 569 U.S. at 569-70; *accord Garvey*, 532 U.S. at 509 (quoting *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 39 (1987)) ("When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award").

In assessing the scope of the arbitrator's power to issue the final award at issue in this case, CIGNA remarkably avoids even mentioning *any* of the binding

precedents that form the backbone of MCAG's principal brief (e.g., *Oxford*, *Gherardi*, *Spirit*, *Ierna*, *Arndt*). But pretending that those foundational principles do not exist does not vitiate their impact; it only operates as a concession that CIGNA cannot justify the district court's vacatur of the arbitrator's award under any applicable legal standard.

Rather than face the binding authorities cited in MCAG's principal brief, CIGNA primarily relies on a Third Circuit case, *Monongahela Valley Hospital Inc. v. United Steel Paper & Forestry*, 946 F.3d 195 (CA3 2019), which has been repeatedly singled out as a distinguishable outlier for reasons that apply with equal force in this case. *See* 11th.Cir.Dkt.49: 40-43.

In short, this case is "meaningfully different" than *Monongahela* because the arbitrator neither "disregarded unambiguous contract provisions" nor "flagrantly add[ed] to or chang[ed] the plain language" of the Settlement Agreement in finding that the class members had been short-changed. *N.E. Univ. v. Serv. Employees Int'l Union, Local 509*, 2021 WL 2813828, at *5 (D.Mass. May 24, 2021); *accord Poly Chain Capital LP v. Pantera Venture Fund II LP*, 2022 WL 2467778, at *6 (Del.Ch. July 6, 2022) ("Unlike in *Monongahela*, the Arbitrator here did not ignore the express language of the [Settlement] Agreement and insert a term that effectively rewrote the agreement"); *Jersey Shore Univ. Med. Ctr. v. Health Pros. & Allied Emps. ad Loc. 5058*, 2022 WL 20668011, at *4 (D.N.J. Oct. 26, 2022) ("ignore the

express language" amounting to a "'manifest disregard'" of the settlement agreement); *Comcast of N.J., LLC v. IBEW Local Union No. 827*, 2022 WL 169895502, at *8 (D.N.J. Oct. 31, 2022) ("ignore[ ] the plain language" and "inject a restriction into" the settlement agreement).

Rather, the facts of this case are aligned with more recent Third Circuit cases that expressly distinguish *Monongahela*, as the arbitrator's finding was "rationally derived from the [Settlement] Agreement," and did not "manifestly disregard" it. *Bayside Constr. LLC v. Smith*, 2022 WL 2593303, at *3 (CA3 July 8, 2022). Indeed, even if the arbitrator's interpretation were "contrary to the fairest reading of the text" of the Settlement Agreement (which it is not), the district court still would have been precluded from vacating the final award because the "arbitrator here, unlike in *Monongahela*, did not just make it up." *Indep. Lab'y Employees' Union, Inc. v. ExxonMobil Rsch. & Eng'g Co.*, 11 F.4th 210, 221 (CA3 2021).

2.    *The Arbitrator's Final Award Interpreted—and at the Very Least "Drew Its Essence" from—the Settlement Agreement*

This Court's law-of-the-case rulings confirm the expansive scope of the arbitrator's powers in this case. The district court had a continuing responsibility to "interpret[ ]" and "administer[ ]" the "terms for how CIGNA would compensate class members" to "ensure the class members receive that to which they are entitled under the Settlement Agreement." *Managed Care*, 939 F.3d at 1156, 1162-63. And the parties and the district court agreed to delegate that responsibility to an arbitrator

for a "binding" and "final resolution of all issues relating to whether the claims for [c]ompensation under the Settlement Agreement … are payable." *Id*.: 1151-52, 1163 n.7 ("MCAG and CIGNA agreed to binding arbitration of the matter"). CIGNA's argument on appeal overlooks key material facts in the record.

First, for example, CIGNA falsely suggests that MCAG did "not identify any specific interpretation" of the Settlement Agreement that the arbitrator conducted in accordance with his mandate, as opposed to an ad hoc "review [of] the decisions of the External Reviewers." 11th.Cir.Dkt.49: 40-43 & 57-59.

But CIGNA ignores the key terms and concepts in the arbitrator's final award, the district court's order on review, and MCAG's principal brief on appeal which show how the arbitrator "specifically interpreted" the Settlement Agreement. *Id*.: 57-58. For instance:

- The arbitrator's final award resolved the parties' dispute by interpreting the "*deemed approved*" provisions in concert with other interlocking provisions for processing and paying class members' claims under the Settlement Agreement. 11th.Cir.Dkt.44-20: 62, ¶146 ("The Settlement Agreement is clear on this point").

- The district court's order on review vacated the final award on the grounds that the arbitrator's interpretation supposedly "*hon[ed] in on*" one contractual requirement to the exclusion of other interlocking provisions

of the Settlement Agreement. *See, e.g.*, 11th.Cir.Dkt.44-7: 190-91 (the arbitrator "prioritize[d] certain provisions of the Settlement Agreement" and "interpret[ed] contractual terms in isolation").

- MCAG's principal brief on appeal explained in step-by-step detail how the district court erred by failing to defer to the arbitrator's interpretation, which "*expressly harmonized*" the provisions establishing the procedures for processing and paying claims under the Settlement Agreement. 11th.Cir.Dkt.36: 50-60.

Remarkably, CIGNA's appellate brief does not address any of the critical terms, topics, and concepts that appear in emphasized typeface above, which demonstrate how the arbitrator interpreted the Settlement Agreement.

Likewise, CIGNA can only argue that the arbitrator impermissibly "review[ed] the decisions of the External Reviewers" by ignoring key facts in the record. 11th.Cir.Dkt.49:40-43, 57-58 (citing 11th.Cir.Dkt.44-7: 189-90). In reality, the arbitrator's final award—along with prior rulings by both predecessor arbitrators—expressly preempted CIGNA's argument by specifically recognizing the premise that the external reviewers were designated to "make the final decisions on claims" submitted by class members under the Settlement Agreement. 11th.Cir.Dkt.36: 53 (quoting 11th.Cir.Dkt.44-11: 174 (Arbitrator Davis)).

Accordingly, as all three arbitrators expressly explained in separate written rulings, the entire purpose of the arbitration was to determine whether the external reviewers were correctly following "the processes" for submitting, reviewing, and resolving the class members' claims for compensation by enforcing the correct interpretation of the relevant provisions of the Settlement Agreement. *Id*.: 54 (quoting 11th.Cir.Dkt.44-11: 182 (Arbitrator Schultz)).

Thus, as the arbitrator made clear in his final award, he properly exercised the authority delegated to him by refraining from reviewing any "substantive decisions" made by the external reviewers, and instead merely determined whether the external reviewers "followed the procedures dictated by the Settlement Agreement correctly." 11th.Cir.Dkt.44-20: 56, 59, ¶¶129, 134; *accord id.*: 56, 59 (predecessor arbitrator expressly applying FAA standards to reject CIGNA's argument that the scope of the arbitration exceeded his powers).

In short, all three arbitrators echoed one another in explicitly considering and rejecting the position that CIGNA advances in this appeal. All three arbitrators agreed that it was necessary to "correct certain specific deficiencies" and "procedural flaw[s]" in the protocols for processing and paying class members' claims by properly interpreting the provisions of the Settlement Agreement that were reproduced, in full, as an exhibit appended to the final award. *Id.*: 59, 94, ¶¶135, 240

11

And, all three arbitrators made clear that they did not review any "substantive decisions" made by any external reviewer. *Id.*: 59, ¶134.

Second, CIGNA falsely suggests that the arbitrator supposedly exceeded his authority by "award[ing] monetary damages" for a "group" or "category" of claims because the Settlement Agreement "only permits a claim-by-claim … determination[ ] by the [External] Reviewers." 11th.Cir.Dkt.49: 41-43, 50-52 & 56.

But, once again, CIGNA is only capable of advancing such a meritless argument by entirely omitting from its appellate brief any discussion of the key terms and concepts that anchor the relevant analysis. For instance:

- The parties disputed their respective rights and obligations under the claims-payment provisions of the Settlement Agreement, including the "*Settlement Consideration*" and "*Claims Distribution Fund*" provisions. *See, e.g.*, 11th.Cir.Dkt.44-4: 36, 50-51, 114, §§1.21, 1.120, 8.3(a).

- The parties thus engaged in "*significant negotiations*," culminating in written arbitration agreements which incorporated a *"high-low" arrangement* that expressly authorized the arbitrator to render a final award for up to "$67 million." 11th.Cir.Dkt.44-8: 17.

- The arbitrator's final award relied on the terms of the Settlement Agreement, together with the "'*high-low' agreement*" reflected in the parties' written arbitration agreements, to require CIGNA "to comply with

the Settlement Agreement by depositing" the amounts wrongfully withheld from the class members into the Claim Distribution Fund, while "*award[ing] nothing directly to MCAG*." 11th.Cir.Dkt.44-20: 13-14 & 94, ¶¶3-5, 240.

- MCAG's principal brief on appeal quoted the language of the Settlement Agreement, the arbitration agreement, and the arbitrator's final award to explain how the value of the claims at issue was undisputed, making it impossible or impracticable to render a "*final resolution of all issues* relating to whether the claims for [c]ompensation under the Settlement Agreement … are payable," without "*quantify[ing] the value* of compensable claims." 11th.Cir.Dkt.36: 56-60.

Yet, once again, CIGNA's appellate brief is silent as to the critical terms, topics, and concepts that appear in emphasized typeface above and summarize how the arbitrator's award was consistent with the Settlement Agreement and arbitration agreements. In summary, the "significant negotiations" between these two sophisticated parties yielded a written arbitration agreement that not only permitted, but required, the arbitrator's "final resolution" of their disputes to encompass a monetary ruling. 11th.Cir.Dkt.44-8: 12-13, 17-19. And, contrary to CIGNA's argument on appeal, the parties' written agreements to arbitrate their disputes about

the Settlement Agreement were not inherently incompatible with the release provisions inthe same Settlement Agreement.

In fact, the arbitration agreements dovetail with the Settlement Agreement in this respect because the parties did not dispute the value of the claims at issue. Rather, the parties only disputed whether certain claims were—or were not—compensable depending on how the arbitrator interpreted the procedures for processing and paying claims under the Settlement Agreement. Thus, the arbitrator emphasized, it was not necessary to review any of the external reviewers' claim-by-claim decisions or engage in any contested calculations. 11th.Cir.Dkt.44-20: 59, ¶135. Rather, the final award merely concluded that interpretive errors concerning the procedures for processing and paying claims under the Settlement Agreement resulted in the erroneous nonpayment of claims whose value was not disputed.

Third and finally, CIGNA lodges a flurry of see-what-sticks arguments that merely quibble over the substance of the arbitrator's substantive decisions without implicating the scope of his authority to render those decisions in the first instance. *See Garvey*, 532 U.S. at 509 (citing *Misco*, 484 U.S. at 36) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement").

For instance, CIGNA implies that the arbitrator's analysis was faulty, including with respect to assessing the parties' "burden of proof," "expert analysis or opinion," or "defenses." 11th.Cir.Dkt.49: 45, 49, 56. But none of these issues are appropriate for review at this juncture. First, CIGNA waived these issues in the district court by failing to raise them as a basis for vacating the arbitrator's final award. *See Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1111 (CA11 2020) ("[I]f a party hopes to preserve a[n] argument … on appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it"). Second, CIGNA waived these issues in the arbitration by failing to raise them before any arbitrator. *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (CA2 1998) ("[I]f [a party] failed to raise the issue … to the arbitrator[,] the issue is forfeited"). Third, to the extent CIGNA "did raise [any] issue to the arbitrator[,] it cannot seek to relitigate the matter" before the district court or this Court. *Id*. Finally, even if these issues had been preserved and capable of review consistent with the FAA, they are meritless in any event.

Take, for example, CIGNA's argument that MCAG supposedly "did not comply with the procedures to make valid claims" under the Settlement Agreement. 11th.Cir.Dkt.49: 43. First, CIGNA does not indicate where in the record it preserved this issue in the district court by raising it as a basis for vacating the final award. Second, CIGNA does not indicate where in the record it raised this issue as a basis

for denying any remedy in the arbitrator's final award. <u>Third</u>, to the extent that CIGNA raised this issue at all, it was fully litigated and resolved on the merits at an earlier stage of the arbitration, approximately 15 years ago. *See, e.g.*, 11th.Cir.Dkt.44-11: 157 n.6.

Or take, as another example, CIGNA's argument that MCAG supposedly "presented no expert or analysis or opinion regarding the claims" at issue. 11th.Cir.Dkt.49: 49. At the outset, CIGNA does not indicate where in the record it preserved this issue as a basis for vacating the arbitrator's final award in the district court. And, in all events, CIGNA is precluded from re-litigating this issue that the arbitrator squarely considered and rejected as a "red herring[ ]" which "misses the point." 11th.Cir.Dkt.44-20: 45-48 & 67, ¶¶85-95 & 158. In fact, the arbitrator went out of his way to commend the opinions of MCAG's accounting expert, which he described as indispensable given the "joint refusal" by CIGNA and the External Reviewers "to assist the tribunal in understanding the data," and were so "precise and candid" that they highlighted a duplication error by the External Reviewers which *reduced* the amount of MCAG's recovery. *Id*.: ¶¶93-94, 202-04 ("[W]ithout" MCAG's expert's opinions, "this Award would not have been possible").

**B.**  **<u>The Arbitration *About* the Settlement Agreement Did Not Violate the Release Provisions *In* the Settlement Agreement</u>**

In June 2008, one of the predecessor arbitrators, the former Chief District Judge for the Southern District of Florida, criticized CIGNA for refusing to "directly

16

address[ ] the arguments presented [by] MCAG[,]" and for instead conjuring disputes "of an entirely different nature" that exist "on an entirely different plane":

> Whereas CIGNA sees its arguments as a "response" to [MCAG's] Motion, I find that they are of an entirely different nature. In other words, whereas MCAG makes legal arguments with respect to the Settlement Agreement, CIGNA's arguments step outside the bounds of the claims procedure set forth in the Settlement Agreement[.]

11th.Cir.Dkt.44-11: 150-51; *accord* 11th.Cir.Dkt. 44-20 at 34-35, ¶52 ("[T]he tone of the … order reflecting Judge Davis' displeasure with CIGNA is apparent"). In this appeal nearly 20 years later, CIGNA employs the same strategy to argue that the arbitration was barred by the release provisions of the Settlement Agreement.

Under any possible mode of analysis (merits-based or waiver-based), and under any possible standard of review (de novo or abuse of discretion), the district court plainly erred. CIGNA, however, reverts to old habits, refusing to directly address most of the relevant factual or legal issues raised in MCAG's principal brief on appeal, while tromping through a thicket of semantic diversions of an entirely different nature on an entirely different plane.

1.    *CIGNA Does Not Directly Address MCAG's Arguments on Appeal*

MCAG's argument on appeal is straightforward: The parties agreed to arbitration to resolve the disputes "that arose out of" their contested interpretations of the Settlement Agreement. *Managed Care*, 939 F.3d at 1156. Accordingly, it has never made sense for CIGNA to assert that the arbitration was somehow

encompassed within the definition of claims that were released because they "arose prior to Final Approval" of the Settlement Agreement. 11th.Cir.Dkt.49: 17-18, 41. Or, to put it simply, the parties' agreement to arbitrate their disputes **about** the interpretation of the Settlement Agreement could not possibly be precluded **by** the release provisions of the same Settlement Agreement.

As MCAG emphasized in its principal brief, the uninterrupted course of the arbitration proceedings over the course of nearly two decades has always been inherently incompatible any affirmative defense based on the release provisions of the Settlement Agreement. For instance, the arbitration stemmed from a motion to enforce the Settlement Agreement filed by one of MCAG's class member clients, which was withdrawn based on CIGNA's proposal to submit to "binding arbitration" to "determin[e] whether" the class members' claims "as provided in the Settlement Agreement were payable." *Managed Care*, 939 F.3d at 1152. The arbitration agreements covered "any issues that … could have been raised before" the district court, and foreclosed MCAG and the class members from "seeking compensation … in any [other] forum" or "through any other means."11th.Cir.Dkt.44-8: 12-13. Then, for years "during arbitration," CIGNA made a series of "concessions" and payments "as required by the Settlement Agreement," including an initial $7.5 million payment, for claims that CIGNA now insists were barred. 11th.Cir.Dkt.44-6: 13-14, 32 & n.2; *Managed Care*, 939 F.3d at 1163 n.7. The district court even entered a

stipulated order underscoring the arbitrator's authority to "make all decisions with regard to the compensability" of the claims under the Settlement Agreement. 11th.Cir.Dkt.44-6: 43.

In attempting to argue that the arbitration was somehow barred by the release provisions of the Settlement Agreement, CIGNA hedged its bets, making "overlap[ping] arguments" as to whether the arbitrator or the district court should adjudicate its affirmative defenses based on the release provisions of the Settlement Agreement. 11th.Cir.Dkt.44-20: 26, ¶30. Although MCAG expected that CIGNA would be forced to finally pick a side in this appeal, CIGNA continues to straddle the fence. 11th.Cir.Dkt.36: 67-68.

From one side of the fence, CIGNA argues that the arbitrator should have adjudicated its affirmative defenses and erred by "ignor[ing]" CIGNA's affirmative "defenses including the Release" in the Settlement Agreement. 11th.Cir.Dkt.49: 56. Meanwhile, from the other side of the fence, CIGNA argues that the district court should have adjudicated its affirmative defenses, including "the Release in the Settlement Agreement," because they were "not subject to Arbitration" in the first instance. *Id*.: 13.

In all events, MCAG's principal brief preemptively explained why CIGNA could not prevail on either inconsistent position. In short, CIGNA's affirmative defenses alleging that the Settlement Agreement "'released all claims' in arbitration"

were necessarily intertwined with the merits of the arbitration, and thus presented a question "for [the] arbitrator[,] not [the] court[,] to decide." 11th.Cir.Dkt.36: 68 (quoting, *inter alia*, *Grigsby & Assocs., Inc. v. M Secs. Inv.*, 635 F. App'x 728, 732 n.9 (CA11 2015)). Accordingly, to the extent that CIGNA's affirmative defenses were not substantively meritless, they were abandoned at least twice over.

First, the arbitrator did not "ignore[ ]" any affirmative defense, but rather decided the issue on the merits. 11th.Cir.Dkt.49: 56. As the district court put it, CIGNA "objected throughout the arbitration proceedings" that "the Settlement Agreement barred these claims." 11th.Cir.Dkt.44-7: 195. Accordingly, the arbitrator "complete[d] the tasks" assigned to him by "adopt[ing]" and "accommodat[ing]" CIGNA's relevant "affirmative defenses," including those relating to the release provisions of the Settlement Agreement, within his final award. 11th.Cir.Dkt.44-20: 55, ¶¶124-26; *accord id.*: ¶24 (reproducing CIGNA's affirmative defenses); *id.*: ¶34 (reproducing the release provisions in the Settlement Agreement); *id.*: ¶¶220-23 (further addressing CIGNA's affirmative defenses based on the release provisions of the Settlement Agreement).

Second, to the extent that CIGNA argues that it failed to raise any of its "*most important defenses*" in arbitration, it cannot capitalize on that tactical decision in the hopes of pursuing a second bite at the apple with a more receptive audience in the district court. 11th.Cir.Dkt.49: 66 (emphasis added). If CIGNA "failed to raise

20

the issue" of its affirmative defenses based on the release provisions of the Settlement Agreement, then the "issue [was] forfeited" as a matter of law, and not preserved for the district court to adjudicate in the first instance. *See generally* 11th.Cir.Dkt.36: 38 (quoting *Europcar*, 156 F.3d at 315); *accord* 11th.Cir.Dkt.44-19: 179 n.1 (CIGNA proposing that the arbitrator enter a finding of fact that CIGNA's "Affirmative Defenses are … preserved" for the district court).

Third, in all events, forfeiture and estoppel principles precluded CIGNA from not only proposing an arbitration to resolve the parties' disputes over the interpretation of a Settlement Agreement, but also participating in that arbitration for nearly 20 years, and foreclosing MCAG and the class members from seeking any other remedy in any other forum, before finally claiming that the arbitration is barred by that very same Settlement Agreement. *See generally* 11th.Cir.Dkt.36: 65; *accord Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1*, 611 F.2d 580, 584 (CA5 1980) ("On whatever basis it rests, waiver, estoppel, or new contract, the result is that the grievance submitted to the arbiter without regard to whether the parties had a prior legal obligation to submit the dispute" to arbitration).

2.  <u>*CIGNA Raises Arguments of a Different Nature on a Different Plane*</u>

In this appeal, CIGNA does not address at all MCAG's primary belt-and-suspenders arguments that any affirmative defenses based on the release provisions

of the Settlement Agreement were either (a) *resolved* on their merits in the arbitration proceedings, or (b) *waived* in the arbitration proceedings. Instead, CIGNA only obliquely addresses MCAG's tertiary (call it MCAG's belt-and-suspenders-and-drawstring) argument that CIGNA *forfeited* those affirmative defenses by proposing and participating in the arbitration. But, to borrow the language of former Chief District Judge Davis, CIGNA "step[s] outside the bounds of" reality and record to make semantic arguments of "of an entirely different nature" on "an entirely different plane." 11th.Cir.Dkt.44-11: 150-51.

First, CIGNA contends that it did not wait "'too long' before raising the argument" that the arbitration was barred by the release provisions of the Settlement Agreement. 11th.Cir.Dkt.49: 64. But timing is only part of the problem, as CIGNA's affirmative defense alleges that only an order of the district court—and not a final award of the arbitrator—is "the sole remedy" available to the class members under the release provisions of the Settlement Agreement. *Id*. And the class members *did* seek a remedy from the district court, though it was withdrawn in favor of the binding arbitration that CIGNA had proposed instead. 11th.Cir.Dkt.44-5: 139-212; *accord Managed Care*, 939 F.3d at 1151 (the motion "request[ing] that the district court direct CIGNA to pay its claims" was withdrawn, "noting that MCAG and CIGNA agreed to binding arbitration of the matter").

22

And, whereas CIGNA now contends that its purported change of heart was reflected "throughout multiple briefs," the earliest filing it cites was submitted in January 2021. 11th.Cir.Dkt.49: 64-65 (citing, *inter alia*, 11th.Cir.Dkt.52-3). By that time, however, CIGNA had actively participated in contentious arbitration proceedings for over approximately 15 years, with each party winning some issues resolved by the arbitrator and losing others. *See Fortune, Alsweet and Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (CA9 1983) ("It would be unreasonable and unjust to allow [a party] to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months"); *Jones Dairy Farm v. Loc. No. P-1236, United Food & Com. Workers Int'l Union, AFL-CIO*, 760 F.2d 173, 175 (CA7 1985) ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it").

Second, CIGNA twists itself into linguistic knots to mischaracterize the arbitration as something other than a resolution of the parties' disputes over the interpretation of the Settlement Agreement. As this Court put it, "the purpose of the arbitration was to resolve disputes involving … claims that *arose out of* the Settlement Agreement." *Managed Care*, 939 F.3d at 1156 (emphasis added). But, according to CIGNA, the arbitration was supposedly barred because the Settlement Agreement released all claims that "*arose out of*" the underlying litigation that spawned the Settlement Agreement. 11th.Cir.Dkt.49: 41 (emphasis added).

CIGNA's argument is a mere tautology: Every dispute that arises from or relates to a settlement agreement could also be said to arise from or relate to the underlying litigation that led to the settlement agreement. Thus, under CIGNA's view, no dispute concerning a settlement agreement could ever survive the generic release provisions that exist in virtually every settlement agreement. Yet CIGNA reformulates this same misleading concept in slightly different terms as a theme throughout its appellate brief.[1]

There is nothing unique about the release provisions in the Settlement Agreement at issue in this case, and no principle of law or logic that categorically

---

[1] To take one variation of this misleading theme, for example, CIGNA's Statement of the Case and Conclusion imply that there was a first (permissible) arbitration and a second (impermissible) arbitration. CIGNA's Argument does not repeat that misconception, but to allay any potential confusion, none of the predecessor arbitrators had ever issued a final award before the final award that is the subject of this appeal, and there was only ever one single arbitration—never two or more separate arbitrations. *See, e.g.* 11th.Cir.Dkt.44-6: 43, ¶1 ("[T]he Parties Stipulate" to "Transfer all litigation … to federal court including the *current* Arbitration") (emphasis added).

To take another variation, for example, CIGNA imagines that the arbitration was a separate litigation based on a cause of action for "a breach of the Settlement Agreement," requiring MCAG to "plead and … prov[e] the elements of [a] breach of contract claim." 11th.Cir.Dkt.49: 44, 63 (cleaned up). But, as CIGNA acknowledges in the same breath, the arbitrator merely *interpreted* the claims-processing and claims-payment provisions of the Settlement Agreement in accordance with the parties' arbitration agreements and the district court's stipulated order, without purporting to adjudicate a tort cause of action for breach of contract. *Id.*:62-63. Notably, to support this misleading argument, CIGNA misquotes a document that does not appear in any appellate appendix. *Id.*: 62 (misciting "DE6745-2 at 1").

24

bars the routine practice of appointing arbitrators to interpret and enforce settlement agreements. *See, e.g.*, *Frontera E. Georgia, Ltd. v. Arar, Inc.*, 483 F. App'x 896, 899 (CA5 2012) ("[T]he [arbitration] panel did not exceed its authority in determining it had jurisdiction to interpret the Settlement Agreement"); *Fitigues, Inc. v. Varat*, 2 F.3d 1153, WL 312888, at *3 (CA7 1993) ("[T]he arbitrator interpreted the … settlement agreement"); *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723-25 (CA7 2008) (same); *United Paperworkers Int'l Union, AFL-CIO, CLC & It's Local No. 369 v. Ga. Pac. Corp.*, 841 F.2d 243, 245 (CA8 1988) ("[T]he arbitrators' awards draw their essence from the … settlement agreement").

These consequences which flow naturally from CIGNA's appellate argument would be unprecedented and untenable. Thus, CIGNA attempts to cabin the effect of its rationale by homing in on a single provision of the Settlement Agreement to repeatedly propose that *only* the district court—but not the arbitrator—could interpret the Settlement Agreement. 11th.Cir.Dkt.49: 15 ("[O]nly the district court could enforce [the] terms" of the Settlement Agreement); *id*.: 19 ("[T]he *process* of reviewing and deciding claims" under the Settlement Agreement "could only be enforced by the [district] court"); *id*.: 25 ("[O]nly the [district] court had jurisdiction to enforce the terms of the Settlement Agreement"); *id*.: 35 ("[O]nly the district court could enforce the procedures of the Settlement Agreement and find that there had been a breach with respect to the processing or implementing of that agreement");

*id.*: 39 ("[T]he sole remedy for a claim based on the administration and implementation of the [Settlement] Agreement is application to the [District] Court for enforcement of the Settlement Agreement").

That is absurd. The class members *did* apply to the district court for enforcement of the Settlement Agreement, which was only withdrawn based on the parties' agreement, initially proposed by CIGNA and ultimately endorsed by the district court, to submit that dispute to arbitration instead. 11th.Cir.Dkt.44-5: 139-212; *Managed Care*, 939 F.3d at 1151. The parties and the district court emphasized that the parties would be "free to raise … any issues that … could have been raised before the district court," under which CIGNA obtained the substantial benefit and eliminated the substantial risk that MCAG and the class members could pursue "compensation … in any [other] forum" or "through any other means." 11th.Cir.Dkt.44-8: 12-13. Whether the outcome is ultimately based on "waiver, estoppel, or new contract," the parties and the district court permissibly delegated the district court's authority to the arbitrator to interpret the Settlement Agreement. *Piggly Wiggly*, 611 F.2d at 584.

## C.    Any Purported Error Did Not Warrant Vacatur of the Final Award

Even if CIGNA had properly preserved and asserted any meritorious argument that the arbitrator committed an error that rose "to the level of affirmative misconduct," or failed to address and resolve any issue, then vacatur is still an

inappropriate remedy. *Garvey*, 532 U.S. at 510 (quoting *Misco*, 484 U.S. at 40-41) ("[A]s a rule the court must not foreclose further proceedings by settling the merits according to its own judgment").

It was "'the arbitrator's construction of the agreement which was bargained for,'" and the district court's vacatur to substitute its own rationale "usurp[ed] a function which [was] entrusted to the arbitrato[r]." *Id*. (quoting, *inter alia*, *Steelworkers*, 363 U.S. at 599) (brackets omitted). Thus, even if the arbitrator's final award was in any way erroneous or incomplete, then "the appropriate remedy is to remand the case for further arbitration proceedings," rather than vacating the final award in its entirety. *Id.*: 511; *accord Ameritech Corp.*, 200 F.3d 967, 977-78 (CA6 2000) ("[I]f the district court were correct in its conclusion" that "the arbitrator's task [was] incompletely executed," then "the proper remedy would have been a remand to the same arbitrator for clarification" or completion).

*** 

"In the present case, [a] validly-appointed arbitrator[ ] oversaw a" three-week "hearing and rendered a thoughtful, reasoned award," in which the "parties received precisely what they bargained for—a speedy, fair resolution of a discrete controversy by an … arbitrator[ ] skilled in the relevant areas of the law. To vacate the Award and remand for an entirely new proceeding would insufficiently respect the value of arbitration and inject the courts further into the arbitration process than Congress has

mandated." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 845-46 (CA11 2011).[2]

WHEREFORE, Appellant Managed Care Advisory Group, LLC respectfully requests that this Court reverse the district court's order granting Appellee CIGNA Healthcare, Inc.'s motion to vacate the arbitrator's final award and remand for further proceedings.

Dated: July 19, 2024

Respectfully Submitted,

**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Wynwood, Florida 33127
Telephone: (305) 297-1878

By:   */s Jeffrey W. Gutchess*
      Jeffrey W. Gutchess, Esq. (702641)
      jeff@axslawgroup.com
      Joshua A. Shore, Esq. (031894)
      josh@axslawgroup.com
      eservice@axslawgroup.com

*Counsel for Appellant*

---

[2] If this Court agrees that the district court erred in vacating the arbitrator's final award, then CIGNA seemingly agrees that the district court on remand may reconsider the merits of MCAG's remaining requests for relief that were denied as moot. *See* 11th.Cir.Dkt.36: 69 (citing cases). CIGNA only argues that the district court's order vacating the final award was correct, without considering the effect that a reversal would have on any other issues that were denied as moot. 11th.Cir.Dkt.49: 65-66.

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains <u>6,342</u> words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word version 365 in 14-point font size and Times New Roman type style.

Dated: July 19, 2024

*/s Jeffrey W. Gutchess*
Jeffrey W. Gutchess
*Attorney for Appellant*

## CERTIFICATE OF SERVICE

I certify that, on July 19, 2024, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, and is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s Jeffrey W. Gutchess*
Jeffrey W. Gutchess
*Attorney for Appellant*